THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LINDA CHESLOW, | ) | |
| | ) | |
| Plaintiff, | ) | No. 21 C 4010 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| CONTINENTAL CASUALTY COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Linda Cheslow brought claims against Defendant Continental Casualty Company ("Continental") alleging breach of contract and fraud claims. (Dkt. 1). Cheslow purchased long-term care insurance from Continental through her employer's group policy. Continental raised nationwide premiums at different rates and times based on varying state regulatory regimes. Cheslow argues the raising of premiums at different rates violated the terms of the contract and amounted to fraud due to Continental's statement that a change in premiums would only occur if "premiums for all other Insureds in the same premium class" rose and that premiums could not be changed due to "age or health." *Id*. For the reasons discussed below, Defendant's Motion to Dismiss [16] is granted in part and dismissed in part.

**BACKGROUND**

On a motion to dismiss under Rule 12(b)(6), the Court accepts the complaint's well-pleaded factual allegations, with all reasonable inferences drawn in the non-moving party's favor, but not its legal conclusions. *See Smoke Shop, LLC v. United States*, 761 F.3d 779, 785 (7th Cir. 2014). Unless otherwise noted, the following factual allegations are taken from Plaintiff's Complaint [1] and are assumed true for purposes of this motion. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

1

Linda Cheslow, a citizen and resident of the State of California, purchased a certificate for long-term care insurance provided by Continental Casualty Company ("Continental") through her employer, Hoffman-LaRoche, Inc.'s long-term care group policy, effective June 1, 2008. (Dkt. 1 ¶¶ 1, 4, 8, 18). Long-term care insurance policies provide for the costs of assistance required due to disability or old age. (*Id*.). Unique from long-term disability insurance, which provides income protection in the event an individual becomes disabled, long-term care insurance provides for a range of services individuals may require if they are unable to care for themselves. (*Id*. at ¶ 12). For example, long-term care insurance may include coverage for assistance in a home or an assisted living facility, among other available services. (*Id*.). Individuals may purchase long-term care at a younger age to "secure a more favorable premium than they could otherwise obtain over the coming years." (*Id*.).

Continental issued long-term care insurance policies across the nation, including a group long-term care policy number 0010177TQ ("the Policy") offered to Hoffman-LaRoche, Cheslow's employer, with an effective date of November 2, 2002. (*Id*. at ¶ 15–16). The Policy Cheslow enrolled in provided her with a daily nursing home benefit of $250, a daily Alternate Care Facility benefit of $250, and a daily Community Based Care benefit of $150. (*Id*. at ¶ 20). Under the heading for "PREMIUM", the Policy certificate specifies:

> We cannot change the Insured's premiums because of age or health. We can, however, change the Insured's premiums based on his or her premium class, but only if We change the premiums for all other Insureds in the same premium class. A change may be made, as provided in the following paragraph, on any Premium Due Date after the end of the Premium Rate Guarantee Period. The Premium Rate Guarantee Period starts on the Participating Employer's Effective Date. The length of this period is stated in the Schedule of the Master Application.

(*Id*. at ¶ 21). The Policy certificate does not include any additional definition of "premium class." (*Id*. at ¶ 24). The rate schedules for the Policy included rates ranging based on only age and benefit

level. (*Id*.). The master policy includes tables of monthly and biweekly premium rates nationwide, without indicating differences based on state of residency. (*Id*. at ¶ 27). In contrast to the Policy Cheslow obtained, Continental also offered individual long-term care insurance coverage policies, one of which stated expressly, "We may change the premium rates. Any change will apply to all policies in the same class as Yours in the state where the policy was issued." (*Id*. at ¶ 37).

At the outset, Cheslow's Policy certificate included a monthly premium of $206.71 or an annual premium of $2,478.12. (*Id*. at ¶ 28). On September 13, 2016, Continental issued a letter to Cheslow indicating her premium would increase by 95.5% in two phases. (*Id*. at ¶ 29). The first phase would be a 70% increase on November 1, 2016, followed by a 15% increase on November 1, 2017. (*Id*.). After the first phase of a 70% increase, Cheslow was informed her new monthly premium payment would be an additional $72.71 each month at $279.42. (*Id*.). In response to the premium increase, Cheslow could react in one of three ways, according to the letter. (*Id*. at ¶ 30). First, she could continue her coverage by paying the new premium of $279.42 each month. (*Id*.). Second, she could reduce her level of coverage to "minimize the effect" of the increase. (*Id*.). Or third, she could execute a non-forfeiture benefit and discontinue premium payments, accepting "a drastically reduced maximum benefit under the certificate." (*Id*.). Cheslow was unable to pay the increased monthly premium and chose to take the second option, reducing her benefit in order to reduce her premium. (*Id*.).

The letter Continental sent in September 2016 also informed Cheslow that the premium rate increase would not be effective for everyone: "Continental . . . must comply with the laws and regulations of the states in which certificates were issued, which vary by state. It is likely that the size and timing of the rate increases may vary by state." (*Id*. at ¶ 31). The rates did in fact vary

3

by states. For example, in Washington D.C., Continental sought a 10% increase to take effect September 1, 2016, for insured individuals in Cheslow's premium class. (*Id*. at ¶ 32).

Cheslow is seeking to raise claims as a class action representing "[a]ll individuals who purchased or are insured under a Continental Casualty Company group policy for long-term care coverage delivered in New Jersey, whose group policy either states or was marketed using material that states that premiums will not increase unless they also increase for all other insureds or all other insureds in a premium class, age, category, or other specified category." (*Id*. at ¶¶ 38–39).

Plaintiff raises five claims for relief. The first count is breach of contract due to Continental's increasing premiums in a manner that was not uniform for all other insured individuals in the same premium class by raising premiums under the Policy at different rates and different times in different states. (*Id*. at ¶¶ 47–53). The second cause is breach of the implied covenant of good faith and fair dealing on the same basis. (*Id*. at ¶¶ 54–60). Third, Cheslow brings a cause of action for violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56: 8-1 *et seq*. ("NJCFA"), "through its unfair and deceptive practices in marketing and selling long-term care policies . . ., including concealing its intent to raise premiums on a state-by-state basis at the time the coverage was sold." (*Id*. at ¶¶ 61–70). The fourth cause of action is fraudulent concealment based on Continental's "failure to disclose . . . its intention to seek premium increases that varied in timing and amount from state to state . . .." (*Id*. at ¶¶ 71–76). Finally, Cheslow raises a cause of action for declaratory and injunctive relief. (*Id*. at ¶¶ 77–81).

## **LEGAL STANDARD**

"To survive a motion to dismiss under 12(b)(6), a complaint must 'state a claim to relief that is plausible on its face.'" *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams*, 742 F.3d at 728 (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)). "[I]t is not enough for a complaint to *avoid foreclosing* possible bases for relief; it must actually *suggest* that the plaintiff has a right to relief…by providing allegations that 'raise a right to relief above the speculative level.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 777 (7th Cir. 2007) (citing *Twombly*, 550 U.S. at 555) (emphasis in original). The Court construes the complaint "in the light most favorable to the nonmoving party, accept[s] well-pleaded facts as true, and draw[s] all inferences in her favor." *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). "[L]egal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 566 U.S. at 678).

## DISCUSSION

### A. Choice of Law for Common Law Claims (Counts I, II, and IV)

Both parties put forward arguments about which state's law applies to the common law claims in Counts I, II, and IV. (Dkt. 17; Dkt. 19). Illinois choice of law analysis guides this Court in a diversity jurisdiction complaint. *Mathis v. Metro Life Ins. Co.*, 12 F.4th 658 (7th Cir. 2021); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Illinois choice of law analysis is required only if an outcome-determinative conflict exists between the laws of Illinois and the laws of another state. *W. Side Salvage, Inc. v. RSUI Indem. Co.*, 878 F.3d 219, 223 (7th Cir. 2017) (citing *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 898 (Ill. 2007)). Continental bears the burden of showing an outcome-determinative conflict exists. *Id*. (citing *Bridgeview Health Care Ctr., Ltd. v. State Farm Fire & Cas. Co.*, 10 N.E.3d 902, 905 (Ill. 2014)

("If the party fails to establish the existence of such a conflict, the court applies the law of the forum state.").

For Counts I and IV, neither party put forward an argument for an outcome-determinative conflict. (Dkt. 17; Dkt. 19). As such, the Court applies the forum law of Illinois to analyze the breach of contract claim and the fraudulent concealment claim. *W. Side Salvage, Inc.*, 878 F.3d at 219; *see also Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 808 (7th Cir. 2021). However, for Count II, both parties argue New Jersey law should apply. The responsibility lies with Continental to demonstrate an outcome-determinative conflict between the law of New Jersey and the law of Illinois on this count, and Continental has effectively done so. Illinois does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing, while New Jersey does in certain circumstances. *Compare Brooklyn Bagel Boys, Inc. v. Earthgrains Refrigerated Dough Product, Inc.*, 212 F.3d 373, 381–82 (7th Cir. 2000), *with Seidenberg v. Summit Bank*, 791 A.2d 1068 (N.J. Super. App. Div. 2002).

This Court finds, as both parties argued, that New Jersey law should apply to the second claim. Illinois applies the "most significant relationship" test in line with the Restatement (Second) of Conflict of Laws (Am. Law Inst. 1971). *Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 919–20 (Ill. 2007). However, the Restatement typically enforces parties' choice of law in a contract. § 187. Plaintiff's Policy membership certificate includes a choice of law provision that New Jersey's law governs contract claims. (Dkt. 1 ¶ 46). Therefore, this Court will apply the laws of New Jersey to the second count.

B. **Count I: Breach of Contract Claim**

Continental allegedly breached the language of the contract in both the group policy and membership certificate providing that premium changes would be "based on his or her premium

6

class, but only if we change the premiums for all other Insureds in the same premium class" by raising premiums at different rates and different times varying by states. (Dkt. 1 ¶ 21). The term "premium class" is not further defined anywhere in the policy. (*Id*. at ¶ 24). If a term is not defined, the Court construes it as an "average, ordinary, normal, reasonable person" would understand the term. *Gillen v. State Farm Mut. Auto. Ins. Co.*, 830 N.E.2d 575, 582 (Ill. 2005); *see also Newman*, 885 F.3d at 998. Plaintiff argues the plain meaning of the policy necessitates a finding that "premium class" is "the nationwide pool of insureds under the group insurance plan within a given age group" since rate schedules in the policy only showed variances due to age and benefit level, rather than by state of residence or place of purchase. (*Id*.). Cheslow relies on Continental's individual long-term care policy forms, which do indicate that premium increases may vary from state to state, for her interpretation as well. (*Id*. at ¶ 37); *see Toulon v. Cont'l Ca. Co.*, 877 F.3d 725, 731.

Continental argues Cheslow is incapable of proving breach of an actual promise. (Dkt. 17 at 6). Specifically, Continental points out the Policy "expressly permits rate increases" and prohibits rate increase based on "age or health" only. (*Id*.). Continental also states, "parties are presumed to know, and contract consistently with, existing law, and existing law is incorporated into contracts." (*Id*. at 7); *see also Braye v. Archer-Daniels-Midland Co.*, 676 N.E.2d 1295, 1303 (Ill. 1997).

Therefore, according to Continental, insured individuals are presumed to know state regulatory requirements prohibit imposition of a "nationwide" rate increase, and such requirements are incorporated into the policy. (Dkt. 17 at 8). Cheslow argues state regulatory regimes are irrelevant to "Continental's promises of a groupwide premium class based on age" since "[n]o

7

statute or regulation mandated any premium increase, let alone increases that vary from one state to the next." (Dkt. 19 at 6).

Unambiguous terms of a contract must be applied "as written." *Am. Standard Ins. v. Allstate Ins. Co.*, 569 N.E.2d 162, 165 (Ill. App. Ct. 1st Dist. 1991). "Illinois treats insurance policies the same way as any other contract." *Newman v. Metro. Life Ins. Co.*, 885 F.3d 992, 998 (7th Cir. 2018) (citing *Hobbs v. Harford Ins. Co. of the Midwest*, 823 N.E.2d 561, 564 (Ill. 2005). A contract term is not considered to be ambiguous "merely because the parties disagree on its meaning." *Rich v. Principal Life Ins. Co.*, 875 N.E.2d 1082, 1090 (Ill. 2007). If a contract term is ambiguous, Illinois law construes the ambiguity "against the insurer." *Newman*, 885 F.3d at 999.

Continental argues a nationwide premium is not a "reasonable" interpretation of "premium class" since "[a]n interpretation of a contractual term that ignores governing law is not 'reasonable.'" (Dkt. 17 at 8); *see also Mitchell Buick & Oldsmobile Sales, Inc. v. McHenry Sav. Bank*, 601 N.E.2d 1360, 1365–66 (Ill. App. Ct. 2nd Dist. 1992). Plaintiff in the alternative claims Continental could raise premiums at a rate that matches the most restrictive state regulations across the board. (Dkt. 19). Continental claims historically, some states have not approved any increase in premium rates. (Dkt. 16 at 9). While the Court may consider extrinsic evidence to resolve a facial ambiguity, the reference by Continental to state regulations as a basis to dissuade the Court of dual reasonable interpretations is unpersuasive at this point. The term "premium class" is not defined; it is ambiguous and subject to multiple reasonable interpretations, including the interpretation put forth by the Plaintiff.

Two other courts in this district have considered this question and issued similar findings.[1] In *Sieving*, the district court found it plausible that Continental could apply nationwide rates matching the lowest rate approved in any state. 535 F. Supp. 3d at 770–71. In *Brown*, the district court also decided the term "premium class" was ambiguous, and Plaintiffs survived the motion to dismiss stage by presenting a plausible interpretation that would render Continental in breach. Case No. 21-cv-2349 at *10 – 11. This Court denies Defendant's motion as to Count I along the same reasoning.

### C. Count II: Breach of Implied Covenant of Good Faith and Fair Dealing

Like the bases for the breach of contract claim, Plaintiff alleges Continental breached the implied covenant of good faith and fair dealing by failing "to exercise its discretion over rate increases reasonably, in a manner consistent with Cheslow's justified expectations." (Dkt. 19 at 5). New Jersey case law recognizes an independent cause of action for breach of the implied covenant of good faith and fair dealing in three situations: "(1) to allow the inclusion of additional terms and conditions not expressly set forth in the contract, but consistent with the parties' contractual expectations; (2) to allow redress for a contracting party's bad-faith performance of an agreement, when it is a pretext for the exercise of a contractual right to terminate, even where the defendant has not breached any express term; and (3) to rectify a party's unfair exercise of discretion regarding its contract performance." *Berlin Medical Assoc., P.A. v. CMI N. Jersey Operating Corp.*, 2006 WL 2162435 at *9 (N.J. Super. App. Div. 2006) (citing *Seidenberg*, 791 A.2d at 1076).

---

[1] *Sieving v. Cont'l Cas. Co.*, 535 F. Supp. 3d 762 (N.D. Ill. Apr. 26, 2021) (finding the definition of "premium class" was ambiguous under Illinois law and the insured party sufficiently alleged breach of contract due to the increasing of premiums at varying rates state-to-state); *Brown et al. v. Cont'l Cas. Co.*, Case No. 21-cv-2349 (N.D. Ill. Mar. 15, 2022) (finding the term "premium class" as ambiguous, with Plaintiffs presenting a plausible argument for breach of contract due to the increasing of premiums at varying rates state-to-state).

In *Berlin Medical Associates*, the court found plaintiffs' breach of the implied covenant of good faith and fair dealing claim was redundant in light of the surviving breach of contract claims. *Id*. at *10 ("We perceive no analytic reason why plaintiffs' surviving contract-based claims . . . would not suffice . . . to prove a just result."). In the present case, Cheslow reiterates the same set of facts for her claim of breach of implied covenant of good faith and fair dealing as she alleges for the breach of contract claim. Her surviving count for breach of contract sufficiently encapsulates her claims based on Continental breaching explicit terms in the agreement, and therefore, Count II is duplicative of Count I and dismissed as such.

### D. Count III: Violation of the NJCFA

The New Jersey Consumer Fraud Act ("NJCFA") prohibits "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . . or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby . . . ." N.J.S.A. 56:8-1, *et seq*. The elements of a claim under the NJCFA are: "(1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss." *New Jersey Citizen Action v. Schering-Plough Corp.*, 842 A.2d 174, 176 (N.J. Super. App. Div. 2003) (Citing *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 465 (N. J. 1994). The unlawful conduct may be "affirmative acts, knowing omissions, [or] regulation violations." *Cox*, 647 A.2d at 462. If the unlawful conduct is an affirmative act, intent is not a necessary element. *Id*. If the unlawful

conduct is an omission, the plaintiff must demonstrate that the defendant acted with knowledge, and intent is an essential element. *Id*.

Cheslow argues Continental violated the NJCFA by affirmatively misrepresenting to insured individuals that the premium being charged "was a nationwide premium that could be raised only based on the age group of the insured" when in fact premiums were charged at different rates by state. (Dkt. 19 at 7). Continental argues application of the Second Restatement requires the Court apply consumer fraud laws of the state with the most significant relationship to a plaintiff's claims. (Dkt. 17 at 14 – 15). Therefore, Continental claims California fraud laws should apply since Cheslow is a California resident who purchased coverage in California from Continental, an Illinois-based insurer. (*Id*.).

Illinois applies section 148 to consumer fraud claims. *Gunn*, 968 F.3d at 802; *see also Barbara's Sales, Inc.*, 879 N.E.2d at 922–23. In tort claims, including unfair and deceptive consumer practices, the Second Restatement's presumptive rule is if the deception took place in the same place as the reliance, the law of that place applies. § 148(1). However, if the deception and reliance took place in different states, the court determines which jurisdiction has "the most significant relationship" to the case by reviewing a list of relevant contacts. § 148(2); *see also Gunn*, 968 F.3d at 809. The factors to consider are: "(a) the state where plaintiff acted in reliance upon defendant's representations, (b) the state where plaintiff received the representations, (c) the state where defendant made the representations, (d) the domicile, residence, place of incorporation, and place of business of the parties, and (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time." *Barbara's Sales*, 879 N.E.2d at 922–23. In this case, the only factor that may weigh towards applying New Jersey consumer protection laws is the final factor, "the place where a tangible thing which is the subject of the

11

transaction between the parties was situated at the time," namely the group Policy purchased by Cheslow's employer. *Id*.

New Jersey applies the same analysis from section 148 of the Second Restatement for choice of law. The district court in New Jersey held "applying New Jersey law to out-of-state claims 'would frustrate the policies of each claimant's state,' even if 'New Jersey has an interest in deterring misconduct by corporations headquartered within its borders.'" *Gelis v. Bayerische Motoren Werke Aktiengesellschaft*, 2018 WL 6804506, at *4 (D.N.J. Oct. 30, 2018) (quoting *Maniscalco v. Borhter Intern. (USA) Corp.*, 709 F.3d 202, 208 (3rd Cir. 2013)). In *Gelis*, the allegation was based on actions and misrepresentations by a Defendant with headquarters in New Jersey. In the present case, Cheslow's allegations are based on the group Policy being issued to her employer, based in New Jersey. (Dkt. 1).

This Court agrees with Continental that the nexus to New Jersey's consumer fraud protections is too attenuated to Cheslow's relationship with Continental and therefore dismisses the third count.

E. **Count IV: Fraudulent Concealment**

The elements of common law fraud are "(1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the plaintiff to act; (4) action by the plaintiff in justifiable reliance on the truth of the statement; and (5) damage to the plaintiff resulting from such reliance." *Newman*, 885 F.3d at 1003. To support a claim of fraudulent concealment, "plaintiffs must allege that defendants concealed a material fact when they were under a duty to disclose that fact to plaintiffs." *Hirsch v. Feuer*, 702 N.E.2d 265, 273 (Ill. App. Ct. 1st Dist. 1998); *see also Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 571 (7th Cir. 2012). A "half-truth" may be sufficient for a claim of fraudulent concealment. *Abazari v. Rosalind*

*Franklin Univ. of Med. & Sci.*, 40 N.E.3d 264, 276 (Ill. App. Ct. 2nd Dist. 2015). More specifically, "A statement which is technically true may nevertheless be fraudulent where it omits qualifying material since a 'half-truth' is sometimes more misleading than an outright lie." *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 969 (Ill. App. Ct. 1st Dist. 2004).

Like the other claims brought in this action, the claim for fraudulent concealment is based on Continental's group policy "suggesting that the premiums are based on age alone." (Dkt. 19 at 9–10). As further basis, Cheslow argues the letter Continental sent to insured individuals describing that increase to premiums would vary by state evinces Continental could have been forthright about the variance during the initial application process. (*Id*. at 10).

Continental argues Cheslow failed to specifically allege the "who, what, when, where, and how" of the alleged fraud in violation of Fed. R. Civ. P. 9(b). (Dkt. 17 at 11); *see United States ex rel. Mamalakis v. Anesthetix Mgmt. LLC*, 20 F.4th 295, 301 (7th Cir. 2021) (quoting *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016)). However, Cheslow did plead in particularity the "who, what, when, where, and how of the fraud." Specifically, Cheslow described in detail the origins of the Policy and communications surrounding the premium rates over the course of her membership in the group Policy.

Continental claims there was no material fact concealed since state regulations were a matter of public law. (Dkt. 17 at 12–13). As this Court stated, the varying state regulations do not conclusively dispose of Plaintiff's argument that Continental committed a breach of contract. Similarly, the range of state regulations "do not necessarily conflict with a promise of uniformity." *Sieving*, 535 F.Supp.3d at 773. It is possible based on the facts plead that Continental concealed a material fact when telling a "half-truth" that misled Plaintiff.

13

Continental further argues no duty to disclose existed, citing *Toulon* for the premise that "a relationship between an insurer and insured does not . . . give rise to a duty to disclose." (Dkt. 17 at 13); *see Toulon*, 877 F.3d at 737–38. However, a duty to disclose may arise if Continental told a "half-truth," at which point Defendant would become obligated to tell the full truth. *Toulon*, 877 F.3d at 737. Based on the complaint, Cheslow has put forward a plausible allegation that Continental's assurances about raising premiums by "premium class" without noting the increases would range based on state of residency could be considered a half-truth, and therefore give rise to a duty to disclose.

Finally, Continental questions Cheslow's pleading on the element of intentionality of the concealment. (Dkt. 17 at 14). Continental claims it is "not plausible" to allege it intentionally concealed information as the state regulatory regimes were public knowledge and presumedly known by Plaintiff. (*Id*.). However, as this Court has determined, it is possible Plaintiff understood the Policy to envision raising premium rates nationwide at the same level and same time, and Defendant could have potentially raised all rates at the most restrictive level for uniformity. It is possible and sufficiently plead that Defendant may have intentionally withheld the material fact of raising premiums based on state of residency.

Similar to the first count, two other courts in this district have come to similar results.[2] This Court denies Defendant's motion as to Count IV along the same reasoning. Cheslow's complaint satisfies the pleading process stage and survives the motion to dismiss on this count.

---

[2] *Sieving v. Cont'l Cas. Co.*, 535 F.Supp.3d (finding the omission that premium increases would vary by an insured's state of residency suffices as an alleged duty to disclose); *Brown et al.*, Case No. 21-cv-2349 (finding the omission that premium increases would vary by an insured's state of residency suffices as an alleged duty to disclose).

F. **Count V: Declaratory and Injunctive Relief**

Finally, Continental moves to dismiss the fifth count on the basis that "plaintiff has not alleged that [Continental] violated any legal rights, or that such a purported violation created a risk of irreparable harm." (Dkt. 17 at 15). As this Court has upheld two of the four other counts as viable claims, the Court denies Defendant's motion to dismiss Count V.

## CONCLUSION

For the reasons set forth above, Defendants' Motions to Dismiss [16] is denied in part and granted in part. Plaintiff's claim in Count II for breach of implied covenant of good faith and fair dealing is dismissed as redundant. Plaintiff's claim in Count III for violation of the NJCFA is also dismissed. Plaintiff's claims in Counts I, IV, and V remain.

_____
Virginia M. Kendall
United States District Judge

Date: May 24, 2022